IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT BLUEFIELD

| | |
|---|---|
| INTERNATIONAL UNION, UNITED ) <br> MINE WORKERS OF AMERICA, *et al.* ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CONSOL ENERGY, INC., Helvetia Coal ) <br> Company, Island Creek Coal Company, ) <br> Laurel Run Mining Company, and ) <br> CONSOL Amonate Facility, LLC ) <br> ) <br> Defendants. ) <br> ) <br> ) | Civil No.: 1:16-cv-12506 |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO TRANSFER PURSUANT TO 28 U.S.C. § 1406(a)**

Defendants, CONSOL Energy Inc. ("CONSOL Energy"), Helvetia Coal Company ("Helvetia"), Island Creek Coal Company ("Island Creek"), Laurel Run Mining Company ("Laurel Run"), and CONSOL Amonate Facility, LLC ("CAF") (collectively, "Defendants"), submit this Memorandum of Law in Support of their Motion to Dismiss, or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a) in response to the First (or Second[1]) Amended Complaint filed by Plaintiffs James Asbury, Roger Beavers, Larry Brewster, Clinton Fields, Arnold Marrs, Eugene Schrader, and the United Mine Workers of America ("UMWA" or "Union") (collectively, "Plaintiffs").

---

[1] At the February 1, 2017 hearing on Plaintiffs' Motion for Preliminary Injunction, Plaintiffs' counsel informed the Court that Plaintiff George Dunford wanted to be dismissed from the case. Defendants' counsel did not oppose.

Defendant CONSOL Energy filed a Motion to Dismiss for lack of subject matter jurisdiction on January 20, 2017. (Doc. No. 13). The four new, non-resident corporate Defendants (sometimes referred to as "the Signatory Companies") named in Plaintiffs' Amended Complaint (Doc. No. 16) have combined their pre-Answer motions to dismiss under Fed. R. Civ. P. 12(b)(1), (b)(2) and (b)(3). CONSOL Energy and the Signatory Companies also move to dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6). In the alternative, all Defendants seek transfer "in the interests of justice," pursuant to 28 U.S.C. § 1406(a), to the Western District of Pennsylvania, Pittsburgh Division for consolidation with the Signatory Companies' January 2nd lawsuit, *Helvetia Coal, et al* v. *UMWA*, C.A. No. 2:17-cv-00002-MPK ("Pennsylvania Case"), a case in which personal jurisdiction, subject matter jurisdiction, and venue are unquestionably proper, and have not been contested.[2]

As developed below, Plaintiffs' January 24, 2017 amendment of their December 23rd Complaint For Injunctive Relief has simply served to compound the facial deficiencies of their putative injunctive pleading. First, there is a lack of subject matter jurisdiction. Second, there is a lack of personal jurisdiction. Third, there is a lack of venue. Fourth, Plaintiffs, foregoing all plainly adequate and expeditious legal remedies, seek an interlocutory injunctive order from this Court, which, under the circumstances, the Court lacks jurisdiction to grant. As fully developed below, given these infirmities the Amended Complaint is properly dismissed, or, in the interests of justice, transferred to the United States District Court for the Western District of Pennsylvania, Pittsburgh Division.

---

[2]  While couched as a Rule 12(b) Motion, the UMWA's January 26th Motion to Dismiss the Pennsylvania Case, *Helvetia Coal, et al* v. *UMWA*, C.A. No. 2:17-cv-00002-MPK (Doc. No. 20) is premised in its supporting brief (Doc. No. 21) solely on a discretionary, first-to-file rationale. The Signatory Companies will respond and oppose the Union's Motion on February 17, pursuant to the Court's Minute Order. (Doc. No. 25) entered in the Pennsylvania Case.

A. **Rule 12(b)(1) Lack of Subject Matter Jurisdiction**

Under Fed. R. Civ. P. 12(b)(1), the Court has an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority, and Plaintiffs bear the burden of establishing that the Court has jurisdiction to hear their claim.[3]

The Union, however, has asserted no cognizable claim at law or in equity in its Amended Complaint. Section 301 of the Labor-Management Relations Act of 1947 ("LMRA"), 29 U.S.C. 185(a), federalizes the construction and interpretation of collective bargaining agreements ("CBA"). It affords access to the federal courts to remedy claimed breaches of same. The federal courtroom, however, is specifically reserved under Section 301 for adjudicating contract violations, not issuing advisory opinions or determining contract validity.

This case was lodged with the Court with a civil cover sheet checking the LMRA box. The Amended Complaint further specifies that jurisdiction is premised on Section 301 of the LMRA. (Doc. No. 16, ¶¶ 2, 17). Section 301(a) of the LMRA, however, provides:

> <u>Suits for violation of contracts</u> between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter . . . may be brought in any district court of the United States having <u>jurisdiction of the parties</u>, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. 185(a) (emphasis added).

Section 301 "erects a gateway through which parties may pass into federal court ...." *Textron Lycoming Reciprocating Engine Division v. UAW*, 523 U.S. 653, 658 (1998). In the *Textron* case, a union and the Government invited the Court to construe the text of Section 301(a) as a broad conferral of subject matter jurisdiction. The Court, however, refused this invitation, and instead recognized that "[b]y its terms, this provision confers federal subject-

---

[3] The subject matter jurisdiction defects discussed here are in addition to those presented by Defendant CONSOL Energy in its January 20, 2017 Motion to Dismiss (Doc. No. 13).

matter jurisdiction <u>only</u> over '[s]uits for violation of contracts.'" *Textron*, 523 U.S. at 656 (quoting 29 U.S.C. 185(a)) (emphasis added). Writing for the Court, Justice Scalia indicated that "a suit for 'violation of a contract' is not one filed 'with a view to' a future contract violation . . . It is filed because a contract has been violated, just as a suit 'for unfair competition' is one filed because unfair competition has occurred." *Id.* at 657. The Court concluded that "the word 'for' [in Section 301(a)] has an unmistakably backward-looking connotation . . ." *Id.*

The Union's premature, anticipatory action filed in 2016 cannot be wedged through the LMRA's narrow, subject-matter (and personal) jurisdiction gateway. The Complaint for Injunctive Relief (Doc. No. 1) is forward-looking -- anticipating a CBA violation at some point in 2017. Plaintiffs' initial Complaint did not allege a violation of a CBA; rather it sought to enjoin certain future actions pending "issuance of a final and binding decision on the UMWA's November 1, 2016 ROD." The Complaint for Injunctive Relief did not even seek an Order compelling arbitration. Indeed as of the time the initial Complaint was filed, the Signatory Companies had not communicated their position that they would not submit to the ROD arbitration process. Such refusal was not communicated until December 27, 2016. (Doc. No. 29-1). The law, however, limits Section 301 jurisdiction to suits filed "because a [CBA] has been violated."

The Amended Complaint does not cure this subject-matter jurisdiction defect. It fails to add a single legal count for relief under any arguably applicable federal law, including a cognizable LMRA count based, for example, on the Signatory Companies' intervening refusal to arbitrate. (Doc. No. 16) ("Count I (Injunction Under Section 301)"). Rather, Plaintiffs failed both at the time of their initial filing (December 23rd) and the filing of their Amended Complaint (January 24th), to plead a cognizable CBA contract violation (or any other cognizable civil

4

violation delineated by federal law). Notably, although the Union was aware of the four Signatory Companies' December 27th refusal to arbitrate the November 1, 2016 ROD at the time Plaintiffs filed their January 24, 2017 Amended Complaint, that Complaint still failed to plead a backward-looking CBA violation, or even seek a legal order compelling arbitration (or expedited arbitration) from the Court.

This is significant because this is not a situation in which, for example, the Union has plead that any or all of the four Signatory Companies had ceased to provide medical insurance or make premium payments pursuant to their ERISA-governed "Benefit Plan for UMWA Represented Employees" ("ERISA Benefit Plan"), or failed to meet any other obligation memorialized in the same. This is also not a case in which the Union could possibly have plead that a lack of medical insurance is preventing or will prevent any UMWA retiree from obtaining medical treatment that could result in harm. Moreover, this is not a situation where arbitral resolution of a 2017 health benefits dispute, even if warranted under the expired CBA, *see Litton Fin. Printing Div. v. NLRB*, 501 U.S. 190, 205-06 (1991), would be meaningless because a Defendant could not remedy the effects of lost medical insurance. Indeed, the caselaw on arbitrability already briefed by the Signatory Companies in the Pennsylvania Case, makes plain that there is no presumption of arbitrability after a CBA has expired. Rather, that presumption applies only to mid-term labor disputes arising under an existing CBA. *See, e.g., Helvetia Coal, et al. v. UMWA*, 2:17-cv-00002 (W.D. Pa.) (Doc. No. 10, at 9) (applying *Steelworkers*' trilogy presumption "wholesale in the context of an expired CBA . . . would make limitless the contractual obligation to arbitrate").

The issue here involves a post-expiration health benefits dispute. Indeed, on December 8, 2016, shortly before the Plaintiffs filed their injunctive complaint, Defendants sent the Union a

5

letter (dated stamped received by the UMWA December 12th) that underscored there would be no modification of the existing retiree benefits delivery system prior to April 2017. (Doc. No. 8-25). Moreover, as Defendants' witnesses testified at the February 1, 2017 hearing, the changes Defendants proposed to implement April 1, 2017 involve a change to the method of delivering benefits -- not the termination (or even reduction) of health benefits for any ERISA Plan beneficiary.[4]

### B. 12(b)(6) Failure to State a Claim

The Union's putative Section 301 lawsuit is forward-looking in violation of Section 301's backward-looking jurisdictional gateway. Accordingly, taking all of its averments in the light most favorable to the Union, Plaintiffs' Amended Complaint for Injunctive Relief (Doc. No. 16) fails to state a claim upon which relief can be granted. Based on the Union's pleading there is no basis to afford legal relief for a demonstrated contract breach -- much less interim coercive relief -- grounded solely in the LMRA. This explains Plaintiffs' inherent difficulty in demonstrating that interim, coercive emergency relief is warranted in February 2017, much less when the original action was filed in December 2016.

### C. 12(b)(2) Lack of Personal Jurisdiction over the Former Signatory Coal Companies

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003); *New Wellington Fin.*

---

[4] Because Plaintiffs have adequate legal remedies and cannot demonstrate the threat of harm, this Court also lacks jurisdiction to grant the injunctive relief requested in Plaintiffs' Amended Complaint under the Norris-LaGuardia Act. This issue was briefed in Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction. (Doc. No. 34). That argument is not re-briefed here, but is incorporated by reference herein.

*Corp. v. Flagship Resort Dev. Corp.*, 416 F.3d 290 (4th Cir. 2005) (plaintiff must prove personal jurisdiction by a preponderance of the evidence).

The West Virginia long-arm statute is co-extensive with the full reach of due process. As such, the statutory inquiry appears to merge with the due process inquiry. *See* West Virginia Code § 56-3-33; *Celotex Corp. v. Rapid Am. Corp.*, 124 F.3d 619, 627-28 (4th Cir. 1997). A plaintiff must demonstrate that the nonresident corporation has "minimum contacts" with the forum, and that requiring "the defendant to defend its interest in the state 'does not offend traditional notions of fair play and substantial justice'". *Carefirst of Md*, 334 F.3d at 397 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

### 1. Defendants Lack Sufficient Contacts with the Forum

Plaintiffs must show that each Defendant added to this case by the Amended Complaint is individually subject to either the Court's specific jurisdiction or general jurisdiction. This means showing that these non-resident corporate defendants have each purposefully directed activities to the forum or its residents, and that their actions are more than in a random, fortuitous or attenuated way. *EASB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 625 (4th Cir. 1997). The aim is to protect a defendant from having to defend itself in a forum where it should not have anticipated being sued.

The Plaintiffs definitely cannot demonstrate the newly joined Signatory Company Defendants are subject to the Court's general jurisdiction given the recent standard prescribed for same. *See Daimler AG v. Bauman*, 571 U.S. __ (2014), 134 S.Ct. 746, 751 (2014) (contacts "so constant and pervasive as to render it essentially at home in the forum State."). The effect of this exacting standard is to essentially subject corporations to general jurisdiction where they are incorporated and have their principal place of business. *Evans v. Johnson & Johnson*, No. 2:14-

CV-29700, 2015 WL 1650402, *7 (S.D. W.Va. Apr. 14, 2015). It is undisputed, however, that none of the Signatory Companies (or Defendant CONSOL Energy) is chartered in or maintain their principal place of business in West Virginia.

### 2. Specific Jurisdiction is Lacking

Moreover, specific personal jurisdiction comports with due process only where "the defendant's suit-related conduct must create a substantial connection with the forum state". *Walden v. Fiore*, 571 U.S. \_\_ (2014), 134 S.Ct. 1115, 1121 (2014). Significantly, in the Amended Complaint filed January 24th, Plaintiffs go out of their way to underscore that there is no such nexus. (Doc. No. 16 ¶ 4) ("It is CONSOL Energy and <u>not its subsidiaries</u> that is engaged in the conduct at issue in this case.") (emphasis added). The exacting standard set forth by the Court is plainly not met in this case.

Traditional notions of fair play are offended by requiring a non-resident corporate defendant to defend itself in a forum where it has never operated, or has not conducted business for many years. In such instances, the forum contacts, if any, are too attenuated to support a federal district court's assertion of *in personam* jurisdiction over the foreign corporations that plaintiffs seek to join as party defendants.

Defendant Helvetia Coal is a Pennsylvania chartered corporation that maintains its principal place of business near Pittsburgh. Its mining operations were performed in Pennsylvania. Affidavit of Kurt R. Salvatori ("Salvatori Aff.") ¶ 5. It never conducted business in West Virginia. *Id.*

Defendant Laurel Run is a Virginia corporation that maintains its principal place of business near Pittsburgh. Laurel Run once conducted mining operations in northern West

8

Virginia, but "has not conducted mining operations in West Virginia, or had employees in West Virginia, or conducted business in West Virginia in the past 10 years . . . ." Salvatori Aff. ¶ 7.

Defendant Island Creek is a Delaware corporation that maintains its principal place of business near Pittsburgh. Island Creek once conducted operations in West Virginia but those operations ceased at least 10 years ago. Salvatori Aff. ¶ 6.

Defendant CAF is a Delaware limited liability company that owns a coal preparation plant in McDowell County, West Virginia, where it has not processed coal for several years. (Doc. No. 38, at 125:20-21).

These nonresident corporations either did not conduct business in West Virginia (Helvetia) or stopped doing so in West Virginia a decade or more before the Union brought suit and joined them as parties in January 2017 (Island Creek and Laurel Run). Requiring the Signatory Companies to defend suit in West Virginia under the specific or general jurisdiction prong of personal jurisdiction offends due process and traditional notions of fair play.

### D.  Rule 12(b)(3) Improper Venue in the Southern District of West Virginia

Plaintiffs, as noted previously, reconstructed their injunctive suit on January 24th to join the Signatory Companies as nonresident, corporate party defendants without bothering to change a word of the "Jurisdiction and Venue" allegations in their initial Complaint for Injunctive Relief. (*Compare* Doc. No. 1 ¶ 11 *with* Doc. No. 16 ¶ 17). Plaintiffs' wholesale failure to allege facts to the Signatory Companies in support of laying venue in the Southern District of West Virginia is contested by these foreign corporations, and does not withstand scrutiny under Rule 12(b)(3), and the applicable general, federal venue statute. *See* 28 U.S.C. § 1391(b).

The venue provision provides, in pertinent part, as follows:

(b) Venue in General. – A civil action may be brought in —

9

(1) a judicial district in which any defendant resides, <u>if all defendants are residents of the State</u> in which the district is located;

(2) a judicial district in which a <u>substantial part of the events or omissions giving rise to the claim occurred</u>…; or

(3) <u>if there is no district in which an action may otherwise be brought</u> as provided in this section, any judicial district in which a defendant is subject to the court's personal jurisdiction with respect to such action.

Each of these provisions has its own set of limitations that must be independently satisfied before venue is deemed proper as to any one of them. Subsection (b)(1) does not provide a basis for laying venue in the Southern District of West Virginia. By its terms, it can only be satisfied if the Defendants, which are all foreign corporations maintaining their principal place of business near Pittsburgh, can be shown to all "reside" in West Virginia, a venue prerequisite that cannot possibly be satisfied here.

Subsection (b)(3) is equally unavailing for purposes of properly laying venue in the Southern District of West Virginia. Subsection (b)(3) is a fall back, venue safety net. It is available as a grounds for laying venue only "if there is no [other] district in which an action may otherwise be brought. . . ." 28 U.S.C. § 1391(b)(3). Indeed, this provision simply underscores the appropriateness of proceeding with the Pennsylvania Case, where jurisdiction has unquestionably attached and the Union could have sued and laid venue for each Defendant in this action, given the substantiality of their connection with that particular forum. *Estate of Ramsey v. UPMC Shadyside*, Civil Action No. 1:14-cv-40, 2014 WL 1794466 (N.D.W.Va. 2014).

The venue analysis therefore hinges on Plaintiffs' proving that venue can be laid in the Southern District of West Virginia under subsection (b)(2). 28 U.S.C. § 1391(b)(2) (erecting a substantiality test based on Defendants' conduct). Plaintiffs' Amended Complaint essentially offers no geographic specifics on point, merely attributing all "conduct at issue in this case" wherever it occurred to the Signatory Companies' parent corporation. (Doc. No. 16 ¶ 4). The Union may assert that the claim it is prosecuting is rooted in events that took place in or around Bluefield. But that is a specious argument for many reasons. By way of illustration, the very Grievant who brought the ROD dispute that prompted both this suit and the Pennsylvania Case (Richard Fink) (Doc. No. 8-21), is conveniently omitted as a party plaintiff even from the January 24th Amended Complaint. Grievant Fink, after all, does not fit Plaintiffs' Bluefield-centric narrative. (Doc. No. 1-5)

Grievant Fink is a Pennsylvania domiciliary, who worked in Indiana County, Pennsylvania for Keystone Coal Mining Co., Salvatori Aff. ¶ 9, in the same Pennsylvania coal fields as hundreds of his fellow UMWA retirees, including Helvetia retirees who reside within the Pennsylvania counties located within the Western District of Pennsylvania.

Yet more probing and fundamental to the venue provision's mandated substantiality analysis than some geographic census of bituminous coal retirees is the self-evident fact that Plaintiffs' claim, channeled only through the pending Fink Grievance, is rooted in the text and meaning of certain provisions in a contractually-negotiated ERISA welfare benefit plan. That same ERISA Benefit Plan (and its accompanying Summary Plan Description) identifies and defines "Helvetia Coal Company," "Laurel Run Mining Company," "Island Creek Coal Company," "Consolidation Coal Company," "Keystone Coal Mining Co." (along with various other coal companies) as sponsoring "Employers" while establishing CONSOL Energy's Vice

11

President of Human Resources as the "Plan Fiduciary" or "Plan Administrator." (Doc. No. 36-4, pp. 1-2). That ERISA Benefit Plan has unquestionably been administered for the benefit of these Signatory Companies and for their UMWA retirees (*i.e.*, Plan beneficiaries) throughout the duration of the 2011 NBCWA (2011-2016) in Canonsburg, Pennsylvania, where these Employers and CONSOL Energy, all maintain their principal place of business.[5] Canonsburg (not Bluefield) is the nerve-center and situs of decision-making concerning the Plan, and the provision of health benefits to the Signatory Employers' eligible UMWA retirees, including the hundreds that reside in western Pennsylvania. Canonsburg is located in Washington County, which is located within the Western District of Pennsylvania, Pittsburgh Division. *See* 28 U.S.C. § 118(c). Under the circumstances, Defendants' suit- related conduct in this District is too slim of a reed upon which to premise a defensible substantiality finding under Section 1391(b)(2).

### E. Transfer to the Western District of Pennsylvania Pursuant to Section 1406(a) is Warranted

Where, as here, an attempt is made to prosecute claims against multiple, non-resident corporate defendants, who do not reside within the forum, and where, as here, venue is improper in Plaintiffs' chosen forum, a federal district court may in its discretion transfer the case "in the interest of justice" to a coordinate court of competent jurisdiction. 28 U.S.C. § 1406(a). Given the *in personam* jurisdiction and Section 1391 venue defects demonstrated above, and the subject-matter jurisdiction defect noted above and previously raised by Defendant CONSOL Energy in its Motion to Dismiss (Doc. No. 13), this Court must dismiss the complaint or properly enter an order transferring the West Virginia Case to a District (transferee forum) where it unquestionably "could have been brought." *Id.*

---

[5] Notably, the 2011 NBCWA that gave rise to the Plan was not negotiated in this Judicial District -- or even in West Virginia -- nor were any of the 2016 negotiations with the Union relating to modification of the Signatory Companies' Plan conducted in this District.

In marked contrast to the West Virginia Case, there is no incipient issue of jurisdiction in the Pennsylvania Case. The Union has either waived or conceded any claim that it is not amenable to personal and subject matter jurisdiction in the Pennsylvania Case that the newly Signatory Company Defendants filed in Pittsburgh on January 2, 2017.

In the Pennsylvania Case the Union did not object to the Plaintiffs' assertion of subject matter jurisdiction under Section 301 of the LMRA. The Union did not contest service of process, or the Western District of Pennsylvania's assertion of *in personam* jurisdiction over it, or the propriety of venue laid in the Pittsburgh Division, less than twenty (20) miles from where the ERISA Plans at issue in the Pennsylvania Case are administered, and where all Defendants in this action are headquartered. *See, e.g.,* 29 U.S.C. § 185(c) ("district courts shall be deemed to have jurisdiction of a labor organization . . . (2) in any district in which its duly authorized officers or agents are engaged in representing or acting for employee members."). 29 U.S.C. § 185(d) ("The service of summons . . . of any court of the United States upon an officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization.").

As such, even assuming there was some evidentiary basis to challenge subject matter jurisdiction, personal jurisdiction, or venue in the Pennsylvania Case, those objections are now untimely as a matter of law. Accordingly, there is unquestionably subject matter jurisdiction and personal jurisdiction over the Union in the Pennsylvania Case, and venue is proper in the Western District of Pennsylvania, Pittsburgh Division, to adjudicate and accord "complete relief" to the parties with respect to controversies about the Signatory Companies' Coal Act Benefit Plan ("Coal Act Benefit Plan") and their ERISA Benefit Plan.

Rather than filing an Answer in the Pennsylvania Case, on January 26th the Union filed a Motion to Dismiss Plaintiffs' Complaint for Declaratory and Injunctive Relief. The Union did not assert that the Pennsylvania Case should be dismissed or transferred "in the interests of justice" to another District to cure a threshold jurisdictional defect. *See* 28 U.S.C. 1406(a) (mandating case dismissal, or alternatively, transfer "in the interest of justice," to remedy looming personal jurisdiction or venue defects that preclude adjudication in plaintiffs' chosen forum). Rather, the Union relied solely on the first-to-file doctrine.

**F. Section 1406(a) Transfer to the Western District of Pennsylvania, Pittsburgh Division is "in the Interest of Justice"**

The Union also did not claim that the Pennsylvania Case should be transferred to another District under a well-established balancing test, designed to promote trial and witness convenience. *See* 28 U.S.C. 1404(a) (discretionary change of courtrooms in the interest of convenience). That would be both counterintuitive and unpersuasive. This makes the 1406(a) transfer of the instant case to the Western District of Pennsylvania, an all the more appropriate vehicle for sound docket administration. Many motions to dismiss filed in the context of dual proceedings will quite naturally seek consolidation through transfer. The Union's decision in the Pennsylvania Case not to invoke the statutory remedies prescribed in Section 1406(a) or 1404(a) confirms the obvious; jurisdiction in the Pennsylvania Case is not contested, and the Union will not be unduly inconvenienced litigating its dispute and enforcing any order and/or judgment it may obtain in a judicial forum where the ERISA plans at issue are administered and the Defendants are headquartered.

Additionally, there is every indication that a Section 1406(a) transfer to the Western District of Pennsylvania will serve the "interests of justice" by promoting an expeditious legal resolution that may well obviate the need to adjudicate the merits of a claim seeking interim,

interlocutory injunctive relief. This is an important consideration from the standpoint of judicial economy. It also comports with principles of equity jurisdiction, including the maxim that equitable relief is not afforded absent a threshold showing as to the inadequacy of a movant's legal remedies.

By way of illustration, the legal remedies sought by the Signatory Companies in the Pennsylvania Case appear fully adequate under the anticipatory circumstances discussed above. These legal remedies include the following: Fed. R. Civ. P. 57 (Declaratory Judgment), Fed. R. Civ. P. Rule 1 (mandate to adjudicate civil cases expeditiously), Fed. R. Civ. P. 56(a) (affording civil plaintiffs the option of foregoing discovery and immediately file for summary judgment on purely legal issues), combined with operative local rule LR Civ P 56.C (30 days to oppose a summary judgment motion and file an accompanying response to movant's "Concise Statement of Material Facts"). Collectively, the legal relief the Signatory Companies diligently pursued in the Pennsylvania Case put the Union on the clock to respond to Plaintiffs' Motion for Partial Summary Judgment to expeditiously resolve the important, threshold, purely legal issue of arbitrability of the disputes.

Moreover, the parties in the Pennsylvania Case consented to the Chief Magistrate Judge presiding over the Pennsylvania Case, and thereby deciding every motion. This includes the Signatory Companies' January 17th Motion for Partial Summary Judgment (as to Counts I and II on arbitrability)[6], and any timely counterclaims and motions filed by the Union, including a motion seeking for equitable relief should the available legal remedies somehow not provide complete and expeditious relief to the parties as a matter of law.

---

[6] The Magistrate Judge in the Pennsylvania Case stayed the date for the Union's response to Plaintiffs' Motion for Partial Summary Judgment pending the outcome of this Court's action on the Plaintiffs' Motion for Preliminary Injunction.

Importantly, the Pennsylvania Case also seeks (i) a Declaration that the Signatory Companies do not breach any obligation to provide the retiree health benefits and benefit levels specified in the expired CBA by implementing a Health Retirement Arrangement (HRA) to deliver those benefits (Count III); (ii) a Declaration that post-expiration negotiations between the parties concerning retiree health benefits is subject to the procedures and requirements of the National Labor Relations Act (Count IV), and (iii) a Declaration that the Signatory Companies have no obligation to arbitrate any issue under their separate Coal Act Benefit Plan for certain retired employees for whom the Companies are required to provide benefits pursuant to Section 9711 of the Coal Industry Retiree Health Benefit Act of 1992, 26 U.S.C. § 9711 (Count II).[7] *See Helvetia Coal et seq. v. UMWA*, 2:17-cv-00002 (W.D. Pa.) (Doc. No. 1).

The issues presented in the Pennsylvania Case are substantially broader than the sole, beleaguered equitable Count in the instant proceeding, (Doc. No. 16 ("Count I (Injunction Under Section 301)")), which makes the Pennsylvania Case the most appropriate vehicle, after case consolidation, for according complete relief to all the parties. Under the circumstances, it is advisable to effect transfer under 28 U.S.C. § 1406(a) to a district where all four nonresident Signatory Companies can be properly joined as parties.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion to Dismiss, or, in the Alternative, to Transfer pursuant to Section 28 U.S.C. §1406(a) should be granted.

---

[7] The Union unilaterally withdrew its November 1, 2016 ROD seeking arbitration of Grievant Dunford's challenge to modifications already made to the Coal Act Plan. *Helvetia Coal et al. v. UMWA*, 2:17-cv-00002 (W.D. Pa.) (Doc. No. 20-1). This is transparent procedural fencing by the Union bent on manufacturing mootness just to make its West Virginia Injunction action look more like the advanced Pennsylvania Case.

16

February 15, 2017					Respectfully submitted,


						/s/ John Woodrum
						John Woodrum
						OGLETREE DEAKINS NASH SMOAK & STEWART
						Suite 1000
						1909 K Street, NW
						Washington, DC 20006
						202/263-0247
						Fax: 202/887-0866
						john.woodrum@ogletreedeakins.com

						*Admitted Pro Hac Vice*

						Jan L. Fox, Esq. (WVSB #1259)
						Steptoe & Johnson PLLC
						P.O. Box 1588
						Charleston, WV 25326-1588
						Telephone: (304) 353-8000
						Facsimile: (304) 353-8180
						Jan.Fox@Steptoe-Johnson.com

						*Counsel for Defendants*

## CERTIFICATE OF SERVICE

       I hereby certify that on this 15 day of February, 2017, I caused a copy of the foregoing "Defendants' Memorandum of Law in Support of Motion to Dismiss, or, in the Alternative, to Transfer Pursuant to 28 U.S.C. § 1406(a) " to be served via the Court's electronic filing system on Plaintiff's counsel of record.

Grant Crandall, General Counsel
W.V. Bar No. 861
Arthur Traynor, Associate General Counsel
Visiting Attorney Pro Hac Vice
International Union, United Mine Workers
of America
18354 Quantico Gateway Drive, Ste. 200
Triangle, VA 22172
Ph: (703) 291-2400
atraynor @ umwa.org

Charles F. Donnelly, Senior Staff Attorney
W.V. Bar No. 1039
International Union, United Mine Workers
of America
1300 Kanawha Boulevard East
Charleston, WV 25301
Ph: (304) 346-0341
cdonnelly @ umwa.org

                                                 */s/ John R. Woodrum*_____
                                                 John R. Woodrum,